**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**,

        Plaintiff,

v.

**READE MANUFACTURING COMPANY**,

        Defendant.

Civil Action No. 3:22-cv-00003 (ZNQ) (JBD)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Plaintiff-Counter Defendant Liberty Mutual Fire Insurance Company ("Liberty") seeking to dismiss Counts Two and Three of the Counterclaim filed by Defendant-Counter Plaintiff Reade Manufacturing Company ("Reade"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 46.) Reade opposed the Motion (ECF No. 53), and Liberty replied (ECF No. 54).

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Liberty's Motion to Dismiss is GRANTED.

1

I. **BACKGROUND AND PROCEDURAL HISTORY**[1]

This case arises out of an insurance coverage dispute between Reade and Liberty. The dispute centers around whether Liberty has a duty to cover Reade for damages and injuries in connection with a waste explosion in November 2018.

Liberty is an insurance company incorporated in Wisconsin with its principal place of business in Boston, Massachusetts. ("Countercl." ¶ 2, ECF No. 45.) Reade is a manufacturer of particulate magnesium powders and products and is incorporated in Delaware with its principal place of business in Manchester, New Jersey. ("Compl." ¶ 3, ECF No. 1; Countercl. 1.)

A. THE POLICY

Liberty issued an insurance policy (the "Policy") to BA Holdings, Inc. and Luxfer Holdings, for the period of August 1, 2018 to August 1, 2019. (Countercl. ¶ 7; *see also* "Policy", Countercl., Ex. A, ECF No. 45-1.)[2] It is not disputed that Reade was insured under the Policy as the indirect wholly-owned subsidiary of BA Holdings, Inc. (Countercl. ¶ 10.)

The Policy provides excess liability insurance coverage, and has a per occurrence limit and general aggregate limit of $2 million, in excess of a "self-insured amount" of $1 million for each occurrence. (Countercl. ¶ 8; Policy at 3.) Coverage is also subject to certain exclusions set forth in the Policy, such as the "Total Pollution Exclusion Endorsement", which excludes from coverage any damages in connection with the release of pollutants.[3] (Countercl. ¶ 14; Policy at 54 ¶ 2.f.)

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Counterclaim as true and draws all inferences in the light most favorable to the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Merchs. Mut. Ins. Co. v. 215 14th Str., LLC*, No. 19-9206, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] In reality, the Policy is a collection of individual documents that Reade attached to its Answer and Counterclaim. The Court will cite to various portions of the Policy by referring to the pagination imposed by the Court's CM/ECF system rather than calling out the individual documents themselves.

[3] "Pollutants" is defined in the Policy to mean "means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Policy at 31 ¶ 17.)

Further, Section VI of the Policy sets forth the rights and duties relating to the defense, settlement and investigation of claims or "suits." (Policy at 33-34.) For instance, the Policy states that Liberty "WILL NOT have the duty to defend or investigate any claim or 'suit' seeking damages to which this insurance may apply." (*Id.* at 14 ¶ 1.3; Countercl. ¶ 11.) The Policy does, however, contain a provision, set forth in Section VII, that provides for the insurer to reimburse certain expenses incurred by the insured where the insured controls the defense. (Policy at 41 ¶ C.1.) Specifically, the relevant provision of the Policy states: "[w]here the insured controls the defense, we will reimburse the insured for 'allocated loss adjustment expense' incurred by the insured for any 'occurrence' after the 'self-insured amount' has been exhausted by the payment of damages and/or 'allocated loss adjustment expense' by the insured for that 'occurrence'." (Policy at 41 ¶ C.1.) The Policy obligates Liberty to reimburse only *after* the "self-insured amount" has been exhausted.

### B.  THE NOVEMBER 12, 2018 EXPLOSION AND RELATED LAWSUITS

The parties dispute an insurance claim that arose out of allegations that Reade's magnesium powder waste caused an explosion at the U.S. Ecology Waste Disposal Plant in Idaho on November 12, 2018. After the explosion, from approximately December 2018 to November 2020, the parties discussed Reade's claim for coverage under the Policy. (Countercl. ¶¶ 41-49.) In August 2019, pursuant to those discussions, Liberty agreed to cover Reade's costs and expenses under the Policy. (*Id.* ¶ 43.)

In November 2020, three lawsuits were filed in Idaho federal and state court against Reade for damages and injuries allegedly caused by the November 2018 waste explosion (the "Lawsuits"). (Countercl. ¶¶ 15-40; *see also* Countercl., Exs. B-D, ECF Nos. 45-2-4.) The Lawsuits assert similar claims against Reade (*id.* ¶¶ 24, 32, 37) and Reade denies the allegations asserted in each lawsuit. (*Id.* ¶¶ 27, 33, 38.)

Reade notified Liberty of the Lawsuits and demanded insurance coverage under the Policy. (*Id.* at ¶ 49.) By letter dated January 25, 2021, Liberty denied coverage for Reade, claiming that coverage is barred by the Policy's Total Pollution Exclusion Endorsement. (*Id.* at ¶¶ 50-51.) After further communications between the parties, on June 4, 2021, Liberty responded to Reade and maintained its denial of coverage. (*Id.* at ¶ 53.)

### C. PROCEDURAL HISTORY

On July 20, 2021, Liberty commenced this action by filing the one-count Complaint for declaratory relief against Reade in the Central District of California. (ECF No. 1.) Specifically, Liberty seeks a determination that it has no duty to indemnify Reade. On January 3, 2022, this action was transferred to this Court, pursuant to a December 28, 2021 Order by the Central District of California (ECF No. 34) granting Reade's request to transfer the action pursuant to 28 U.S.C. § 1404(a). (ECF No. 33.)[4]

On March 3022, Reade filed an Answer and Counterclaim against Liberty, in which it seeks declaratory judgment from this Court that the Policy provides coverage for the Lawsuits and thus, obligates Liberty to provide coverage to Reade, including reimbursement and indemnification in connection with the Lawsuits (Counterclaim One). (ECF No. 45.) Reade also asserts counterclaims for breach of contract (Counterclaim Two) and breach of implied covenant of good faith and fair dealing (Counterclaim Three). (*Id.*) On March 23, 2022, Liberty filed the instant motion to dismiss Counterclaims Two and Three for failure to state a claim. (ECF No. 46.)

---

[4] On July 22, 2021, two days after Liberty filed its Complaint, Reade initiated its own separate lawsuit in this Court based on the same insurance claim dispute. *See Reade Mfg. Co. v. Liberty Mut. Fire Ins. Co.*, No. 21-13990. Subsequently, upon a motion filed by Reade, the two cases were consolidated by this Court in a Letter Order dated May 17, 2022. (ECF No. 55.) Pursuant to that Letter Order, Civil Action No. 21-13990 was consolidated into the instant action, Civil Action No. 22-00003. (*Id.*)

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## III. LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S. Ct. 2932 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include

5

"further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. 1955).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932 (citations omitted).

The same legal standard applies when reviewing a motion to dismiss counterclaims. *See United States v. Boston Sci. Neuromodulation Corp.*, No. 11-1210, 2014 WL 4402118, at *2 (D.N.J. 2014) (citing *Cnty. of Hudson v. Janiszewski*, 351 F. App'x 662, 667–68 (3d Cir. 2009) ("The standards for a properly pled complaint[ ] by extension apply to counterclaims.")); *see also Meng v. Du*, No. 19-18118, 2020 WL 4593273, at *2 (D.N.J. Aug. 11, 2020).

**IV.   DISCUSSION**

Liberty argues that Counts Two and Three of the Counterclaim should be dismissed for failure to state a claim. In support of this contention, Liberty argues that Reade has prematurely asserted a claim for breach of contract and has failed to allege sufficient facts in support of the claim. As the underlying lawsuits are currently pending, there is no judgment or settlement and thus, Liberty has no present obligation to Reade under the Policy to indemnify or defend Reade in the underlying lawsuits. ("Moving Br." at 6, ECF No. 47.) Without any contract obligation, Liberty contends, there can be no breach. (*Id.*) Liberty also argues that Reade cannot state a claim

6

for bad faith absent a valid claim for breach of contract. Liberty also contends that Reade fails to allege any specific factual allegations as to how Liberty has breached the implied covenant of good faith and fair dealing. (*Id.* at 7.)

The Court addresses Liberty's arguments with respect to each counterclaim in turn.[5]

### A.   BREACH OF CONTRACT (COUNTERCLAIM TWO)

Liberty argues that Reade has alleged insufficient facts with respect to the duty and breach elements required to state a claim for breach of contract. (Moving Br. at 6.) With respect to duty, Liberty asserts that the Counterclaim does not support the existence of any present obligations that Liberty owes to Reade under the Policy. Specifically, Liberty contends that Liberty has no ongoing duty to defend Reade in the Lawsuits nor is there a final judgment or settlement in the Lawsuits for Liberty to indemnify.

To state a claim for breach of contract under New Jersey law, a plaintiff must plead (1) the existence of a valid contract; (2) that plaintiff performed under the contract; (3) the defendant's breach of the contract; and (4) damages resulting from the breach. *See Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. App. Div. 2017). To survive motion to dismiss, "a mere recital of the elements themselves will not suffice. *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 U.S. Dist. LEXIS 96361, at *2 (D.N.J. Oct. 16, 2009). "Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Eng'red Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011). "Failure to allege the specific provisions of contracts breached is grounds for dismissal." *Id.*; *see also Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296,

---

[5] While the parties differ as to which state's law should apply to the case as a whole, they nevertheless agree that the Court may apply New Jersey law for the purposes of this motion. Accordingly, the Court applies New Jersey law to this Motion.

303 (D.N.J. 2019) ("The plaintiff must also specifically identify portions of the contract that were allegedly breached.") (citation omitted).

In this case, the contract underlying the breach of contract claim is an insurance policy. Like any other contract, insurance policies are construed in accordance with principles that govern the interpretation of contracts. *Mem'l Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012). The parties' insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010).

Here, as pled, Reade's counterclaim for breach of contract alleges that Liberty breached the Policy by failing to provide coverage for Reade with respect to the Lawsuits. Counterclaim Two itself only contains allegations amounting to "a mere recital of the elements" comprising a breach of contract claim in Counterclaim Two. *Yapak*, 2009 U.S. Dist. LEXIS 96361, at *2. However, the Counterclaim's factual background provides some color as to which specific provisions Reade is alleging that Liberty has breached.[6] (Countercl. ¶¶ 7–62.)

The Policy does not mandate a duty to defend because it unambiguously states that the insurer owes no duty to defend. Nor has Reade alleged that any provisions in the Policy have been triggered such that Liberty does have a duty to defend Reade with respect to the Lawsuits.

Here, the Court finds that the Counterclaim fails to assert any facts with respect to whether the self-insured amount has been exhausted, as required under the plain language of the Policy. Nor does the Counterclaim allege that Reade provided notice that it had exhausted the self-insured

---

[6] To the extent Reade's breach of contract claim relies on upon a breach of a duty to indemnify with respect to the Lawsuits, such a basis is premature so long as the Lawsuits are pending. *See Cold Spring Granite Co. v. RLI Ins. Co.*, No. 19-8491, 2020 U.S. Dist. LEXIS 33390, at *14 (D.N.J. Feb. 27, 2020) (finding that the insured's duty to indemnify claim was not ripe for adjudication where the underlying action was pending); *see also Hartford Ins. Co. v. Dana Transp. Inc.*, 2018 U.S. Dist. LEXIS 88659, at *14 (D.N.J. May 18, 2018) ("As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action.") (internal quotations and citations omitted).

amount or otherwise requested reimbursement specifically in excess of the self-insured amount. For instance, after the Lawsuits commenced in November 2021, Reade alleges that it notified Liberty of the Lawsuits and demanded insurance coverage under the Policy. (Countercl. at ¶ 49.) Without alleging further facts that demonstrate the necessary conditions are met for the reimbursement provision to apply, Reade cannot state a claim for breach of contract based on Liberty's alleged failure to reimburse.[7] Therefore, the Court dismisses without prejudice Reade's Counterclaim Two for breach of contract.[8]

### B. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTERCLAIM THREE)

Next, the Court turns to Reade's "bad faith" counterclaim for breach of the implied covenant of good faith and fair dealing. Liberty argues that Reade's bad faith claim does not allege facts of a contractual obligation that has been breached, nor any bad faith conduct in connection with any such breach. (Moving Br. at 7.)

New Jersey has recognized a cause of action for an insurance company's "bad faith" failure to pay an insured's claim. *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 400-01 (D.N.J. 2000) (citing *Pickett v. Llyod's*, 131 N.J. 457, 470 (1993)). To establish a claim for "bad faith," the plaintiff must demonstrate: (1) the absence of a reasonable basis for denying benefits of the

---

[7] The Court notes that Reade attempts to plead such facts in its briefing opposing the instant Motion. (*See, e.g.*, Opp. Br. at 6; "Decl. of Megan E. Glise" at ¶ 4, ECF No. 53-1.) However, as Liberty asserts in its reply brief, these facts are not expressly set forth in Reade's Counterclaim. ("Reply Br." at 2, ECF No. 54.) A complaint cannot be amended by the briefs in opposition to a motion to dismiss. *See Pa. ex rel. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted).

[8] The Court further cautions Reade that its declaratory relief claim (Counterclaim One) appears to be duplicative of its now-dismissed claim for breach of contract. Where a party brings claims for both declaratory relief and breach of contract, such claims are duplicative in that "adjudication of the breach of contract claim will still resolve the same issue and necessarily decide the question raised by the declaratory judgment claim." *Universal Prop. Servs. Inc. v. Lehigh Gas Wholesale Servs. Inc.*, No. 20-3315, 2021 U.S. Dist. LEXIS 83058, at *16 (D.N.J. Apr. 30, 2021) (citations omitted). In such cases, "courts [in this Circuit] have routinely dismissed declaratory judgment claims that are merely redundant of a plaintiff's other claims." *Watkins v. Bai Brands, LLC*, No. 17-2715, 2018 U.S. Dist. LEXIS 27237, at *10 (D.N.J. Feb. 20, 2018); *see also, e.g., Law Office of Drew J. Bauman v. Hanover Ins. Co.*, 2023 U.S. Dist. LEXIS 31844, at *7 (D.N.J. Feb. 27, 2023) (dismissing plaintiffs' claim seeking declaratory judgment that insurer was obligated to provide defense and indemnification under an insurance policy because it was duplicative of plaintiffs' breach of contract claim.).

9

policy and (2) that the defendant knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *See Pickett*, 131 N.J. at 473. New Jersey law also recognizes a "fairly debatable" standard with respect to tort-based liability in the insurance contract context—"if a claim is 'fairly debatable', no liability in tort will arise." *Id.* (citation omitted). Allegations parroting the elements of a cause of action for bad faith, without more, are subject to dismissal on a Rule 12(b)(6) motion. *See Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 U.S. Dist. LEXIS 244145, at *5-6 (D.N.J. Dec. 22, 2021).[9]

Here, the Counterclaim asserts that Liberty breached the duty of good faith and fair dealing by denying coverage under the Policy without proper cause or a "fairly debatable" basis. (Countercl. ¶¶ 80-82.) However, for the reasons set forth below, Reade has not provided sufficient factual allegations to suggest that Liberty acted in bad faith, *i.e.*, that it had ill motive or lacked a "reasonable basis" to deny coverage. *See, e.g., Veyhl*, 2021 U.S. Dist. LEXIS 244145, at *6.

In support of its suit, Reade points to two instances in which Liberty denied coverage in January and June 2021. (Countercl. ¶¶ 50, 53.) Reade alleges that Liberty's "outright denial of coverage is, in the first instance, premature, as there have been no rulings or determinations in the Underlying Lawsuits regarding the cause of the Explosion." (*Id.* ¶ 54.) It also contends that "Liberty's conclusion regarding the supposed causation of the Explosion is simply self-serving and is a bad-faith, blatant violation of its obligations under the Policy." (*Id.* ¶ 55.) But Reade points to no facts to support its conclusory allegations. The facts it does plead do not support any inference that Liberty acted in the requisite "bad faith." *See, e.g., Raritan Bay Fed. Credit Union v. Cumis Ins. Soc., Inc.*, No. 09-1512, 2009 U.S. Dist. LEXIS 63216, at *3 (D.N.J. July 23, 2009) ("[T]he mere allegation that [insurer's] denial of coverage inferentially establishes bad faith relies

---

[9] Where an insurance contract is at issue, a claim for "bad faith" "represents a traditional contract claim that the insurer breached the implied covenant of good faith and fair dealing." *Wood v. N.J. Mfrs. Ins. Co.*, 206 N.J. 562, 565 (2011).

on the very speculation that *Twombly* forbids"); *Yapak*, 2009 U.S. Dist. LEXIS 96361, at *2 (dismissing breach of implied covenant of good faith and fair dealing claim where bare allegation of "willful, wanton, and malicious" failure of insurer to make payments did not "support an inference that Plaintiff's claim for breach of the duty of good faith and fair dealing [was] a plausible one").

If anything, the facts pled in the Counterclaim suggest that Liberty did have a reasonable or "fairly debatable" basis to deny Reade's claim for coverage. Liberty based its denial of coverage on the Policy's Total Pollution Exclusion Endorsement. (Countercl. ¶¶ 50-51.) Its identification of a specific exclusion "demonstrate[s] that there is, at the very least, genuine questions regarding whether [Reade's] claims fall within the coverage provided." *N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 11-0630, 2022 U.S. LEXIS 149162, at *22 (D.N.J. Dec. 27, 2011). This renders "dismissal of a related bad faith claim [ ] proper, even on a motion to dismiss." *Nationwide Mut. Ins. Co. v. Caris*, 170 F. Supp. 3d 740, 749 (D.N.J. 2016).

Accordingly, the Court finds that Counterclaim Three fails to state a viable claim for bad faith or breach of the implied covenant of good faith and fair dealing.[10]

V. **CONCLUSION**

For the reasons set forth above, Liberty's Motion to Dismiss is GRANTED. Counts Two and Three of Reade's Counterclaim are DISMISSED WITHOUT PREJUDICE. To the extent that

---

[10] Further, the Court notes that even if Reade had adequately pled a claim for breach of the implied covenant of good faith and fair dealing, this claim may be subject to dismissal as duplicative of its breach of contract counterclaim (Counterclaim Two). "[A] '[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim.'" *Adler Eng'rs, Inc. v. Dranoff Props.*, No. 14-921, 2014 U.S. Dist. LEXIS 153497, at *39 (D.N.J. Oct. 29, 2014) (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009)).

Reade believes it can cure the deficiencies in its counterclaims discussed above, Reade is given leave to amend its counterclaims within 30 days from the date of the accompanying Order.

Date: **May 23, 2023**

                                       /s/ Zahid N. Quraishi
                                       **ZAHID N. QURAISHI**
                                       **UNITED STATES DISTRICT JUDGE**